UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| TRANSCANADA POWER MARKETING LTD., </br></br>Plaintiff, </br></br> v. </br></br> NARRAGANSETT ELECTRIC COMPANY, </br></br>Defendant. | C.A. No. 05-40076FDS |

**PLAINTIFF TRANSCANADA POWER MARKETING LTD.'S
REPLY TO "DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION TO ENJOIN DEFENDANT NARRAGANSETT ELECTRIC
COMPANY FROM PROSECUTING AN ACTION IN RHODE ISLAND"**

Plaintiff TransCanada Power Marketing Ltd. ("TransCanada") hereby replies to "Defendant's Memorandum in Opposition to Plaintiff's Motion to Enjoin Defendant Narragansett Electric Company from Prosecuting an Action in Rhode Island." (Defendant's "Opposition Memorandum").[1]

In its Opposition Memorandum, Defendant Narragansett Electric Company ("Narragansett") offers no relevant law or facts that actually support its blatant attempt to forum-shop by filing an entirely duplicative, second action in Rhode Island. Instead, Narragansett argues that this Court should be deprived of jurisdiction over this matter – and that plaintiff TransCanada should be stripped of its home forum – on grounds that: (i) allegedly, TransCanada is not the "natural plaintiff" and "rushed to the courthouse" (both of which are clearly false); and (ii) the "public interest" – just one of the six primary balance of convenience factors – allegedly

---

[1] Along with this Reply, TransCanada files the Declaration of Wendy S. Plotkin. Attached as Exhibit A to the Plotkin Declaration is the Affidavit of Michael Hachey (and its Exhibits 1-20). This is the same Hachey Affidavit attached as Exhibit K to the O'Rourke Affidavit without its exhibits.

1

overcomes, alone, all other relevant factors pointing to Massachusetts and the strong presumption in favor of this first-filed Massachusetts action. None of Narragansett's arguments has merit, and TransCanada's Motion to Enjoin should be granted.[2]

## **ARGUMENT**

I. TRANSCANADA IS THE NATURAL PLAINTIFF AND DID NOT RACE TO THE COURTHOUSE

Narragansett asserts that TransCanada is not the "natural plaintiff" in this matter, and that TransCanada "raced to the courthouse solely to obtain a preferred forum." Both of these allegations are wholly without merit.[3]

### A. TransCanada is the Natural Plaintiff

First, it is clear simply from TransCanada's Complaint, and from reading Narragansett's Answer and Counterclaim, that TransCanada is the aggrieved party and " natural plaintiff" in this action. TransCanada's Complaint alleges that Narragansett breached the WSOS Agreement by: (i) failing to file for or make reasonable efforts to obtain a retail tariff providing a fuel adjustment for TransCanada after 2004; (ii) failing to pay an undisputed fuel adjustment to TransCanada after 2004; and (iii) failing to indemnify TransCanada for loss of the fuel adjustment factor. (Complaint, ¶ 36). TransCanada sent a default notice to Narragansett based

---

[2] Narragansett also argues that this Court should refrain from decision on grounds that the forum issue had also been briefed before the Rhode Island Court, but the Rhode Island Court correctly ruled on October 5, 2005 that this Court should be the Court to resolve the forum dispute. (See Decision and Order, Plotkin Declaration Ex. B. See Also, Memo to Enjoin, at 7-9).

[3] The cases Narragansett cites for the general proposition that the first-filed rule is not to be mechanically applied (Opp. Mem. at 12-13) are also unhelpful to its cause. These cases either (i) support dismissal of Narragansett's second-filed action, *see SW Indus. v. Aetna Cas. & Sur. Co.*, 653 F. Supp. 631, 634, 634-39 (D.R.I. 1987) (staying second-filed action); *Feinstein v. Brown*, 304 F. Supp. 2d 279, 281-84 (D.R.I. 2004) (denying a motion to dismiss the first-filed action); *800-Flowers v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131-136 (S.D.N.Y. 1994) (dismissing the second-filed action), or (ii) are clearly inapplicable, *Glades Pharms. v. Call, Inc.*, 2005 WL 563726, at *8-9 (E.D. Pa. 2005) (declining to exercise first-filed rule only because the second-filed action had actually been filed first but was dismissed on grounds of forum non conveniens); *Affinity Memory & Micro, Inc. v. K&Q Enters*, 20 F. Supp. 2d 948, 950-55 (E.D. Va. 1998) (declining to exercise first-filed rule because the first-filed court had no jurisdiction over the plaintiff in the second-filed action, among other reasons also not applicable here).

upon these breaches, and now asserts in its Complaint affirmative claims for damages under Massachusetts contract law.  (*See Id*. at ¶32; Hachey Aff. ¶2 & Ex. 1.).

Narragansett's "Counterclaim," in contrast, simply asserts that TransCanada's claims lack merit.  Narragansett asserts: an alleged breach of contract claim based on TransCanada's "demand[s]" for payment of a fuel adjustment factor (Count I); a declaratory judgment claim that TransCanada is not entitled to fuel adjustment payments and has no right to terminate the WSOS Agreement (Count II); and alleged breach of good faith based on TransCanada's assertion of its claims (Count III).  (*See* Counterclaim, ¶¶ 35-40.)

Narragansett's decision to make three months of "protest payments" to TransCanada – following TransCanada's default notice to Narragansett and preceding filing of this action – clearly does not turn Narragansett into the "plaintiff."  Narragansett admittedly made these payments for tactical reasons, under protest and with reservation of rights, and with no promise to pay TransCanada for the remaining 57 months of the Agreement.  (*See* Opp. Mem. at 8; Hachey Aff. ¶4 and Ex. 2).  Thus, even the "protest payments" made to date remain subject to dispute.  Narragansett has never corrected its Rhode Island tariff filings to authorize TransCanada to actually receive and keep such payments, and Narragansett presumably will continue payments only as long as deemed tactically advantageous.  TransCanada is still suffering "harm" despite these protest payments, since it is continuing to supply electricity to Narragansett without any guarantee that it can actually retain the payments it is receiving for that electricity.

Finally,  Narragansett's assertion that it is the "plaintiff" is also markedly disingenuous: even after Narragansett began making its "protest payments," Narragansett still insisted that TransCanada initiate any proposed arbitration by submitting a "written Statement of the

3

Dispute," to which Narragansett would submit "an Answer." (Hachey Aff. ¶6, Ex. 11.)[4] Similarly, and notably, Narragansett has never itself sent a default notice to TransCanada for any alleged breach of the WSOS Agreement. Thus, Narragansett has never even satisfied the contractual prerequisites to assert affirmative breach of contract claims against TransCanada. (*See* WSOS Agreement, Article 7(1)(a).) Thus, contrary to Narragansett's recent arguments to secure a forum, TransCanada clearly is and has always been the "plaintiff" in this case.

      B.    <u>TransCanada could not have, and did not, improperly "Race to the Courthouse".</u>

Since TransCanada is the natural plaintiff in this case, the "race to the courthouse" cases cited by Narragansett simply have no application. These cases address the situation where the putative defendant, upon threat of imminent suit by the natural plaintiff, acts to mislead the plaintiff out of filing suit and itself rushes to court to file a defensive action solely to secure a preferred forum. *See Holmes Group v. Hamilton Beach/Procter Silex*, 249 F. Supp. 2d 12, 16 (D. Mass. 2002); *Feinstein,* 304 F. Supp.2d at 283; *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 70 (D.R.I. 1999). In order to apply these cases here, Narragansett would have to argue that TransCanada, the natural plaintiff, somehow improperly duped Narragansett, the natural defendant, out of filing an anticipatory *defensive* suit in Rhode Island. That is not an argument supported by the case law, and thus Narragansett's "race to the courthouse" argument fails as matter of law.

TransCanada is the natural plaintiff with a presumptive right to file in its own Massachusetts forum, *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004), which is a forum which is heavily connected to the dispute. *See GT Plus Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421, 425-26 (S.D.N.Y. 1998). In situations such as this, the plaintiff's choice of forum must

---

[4] Like Narragansett, TransCanada submits information concerning settlement and arbitration discussions in full recognition of their protection under Federal Rule of Evidence 408, and not to prove liability but rather to address the relevant procedural background.

prevail. *BASF Corp. v. Symington*, 50 F.3d 555, 55-59 (9th Cir. 1995) ("actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of suit").

This Court therefore need look no further at Narragansett's "race to the courthouse" submission. The deficiencies in Narragansett's "race to the courthouse" arguments, however, are not limited to the lack of legal underpinning. For if the court reviews the actual factual record, rather than the general allegations in Narragansett's Opposition Memorandum, Narragansett has not established an improper "race to the courthouse" even were TransCanada the *defendant*. First, contrary to the general allegations in Narragansett's Opposition Memorandum, at 13-15, the actual facts in this case show absolutely no misleading conduct by TransCanada whatsoever. *See* Hachey Affidavit and Hager Affidavits. In fact, Narragansett's counsel affirmatively stated at the hearing in Rhode Island that Narragansett does *not* allege any bad faith or misleading conduct by TransCanada. (RI Transcript, at 37-41, 44).[5] Similarly, Narragansett makes no allegation that it was threatening to assert a claim or go to court itself as plaintiff, and indeed

---

[5] Many other allegations in Narragansett's Opposition Memorandum are also contradicted by the factual record. As just a few examples, and contrary to the allegations at the bottom of page 8 of the Opposition Memorandum: (i) the referenced April 25, 2005 e-mail clearly set a *deadline* for Narragansett to continue arbitration discussions, and did not agree simply to "hold off" those discussions indefinitely. [Hachet Aff, ¶12 and Ex. 16]; and (ii) no actual "drafts" of settlement agreements were exchanged until *after* TransCanada had already filed suit, other than a handwritten proposed term sheet which was uniformly rejected by the Rhode Island Division. [*Id.* at 14].
In addition, and even to the extent Narragansett purports to argue that any of TransCanada's facts are disputed, it is Narragansett's burden to establish a "race to the courthouse" and it has offered no admissible testimony on many of its points. This Court should not consider any of (i) portions of the Supplemental Hager Affidavit not based on personal knowledge (*see, e.g.*, ¶¶ 4-5, 7-8, 20-21), but instead on a hearsay recounting (in some cases double hearsay) of conversations to which Hager was not a party, *Brookfield Machine, Inc. v. Calbrit Design,* 929 F. Supp. 491 (striking portions of affidavit that constituted hearsay and were not based on personal knowledge); and (ii) other portions of the Supplemental Hager Affidavit and certain of its exhibits (*see, e.g.*, ¶ 21, Exs. B,D,E,G), which are based on internal, selectively produced and privileged documents produced in anticipation of litigation that are not admissible as business records, and should not be considered without full and non-selective disclosure. *See Beacon Mutual Ins. Co. v. One Beacon Ins. Co.*, 376 F. Supp. 2d 251, 262 (D.R.I. 2005) (acknowledging that the business record exception to the hearsay rule is not available when a document is prepared in anticipation of litigation.) Judge Smith expressly noted that Narragansett's allegations concerning settlement discussions were based on "emails that amount to about triple hearsay, maybe more." *See* Ex. I to O'Rourke Affidavit, p. 44-46. This Court should strike all inadmissible portions of Narragansett's affidavits.

Narragansett never even sent a default notice to TransCanada for any alleged breach. Narragansett also does not allege either that TransCanada filed suit in anticipation of imminent suit by Narragansett, or that the parties had actually agreed to and signed any agreement to arbitrate.

In sum, the factual submissions simply show that TransCanada sent a default notice to Narragansett; and then filed suit after several months of unsuccessful settlement discussions. Narragansett does not allege affirmatively misleading statements by TransCanada, or that TransCanada "reacted to notice of imminent filing" by rushing to the courthouse the next day. *See Feinstein*, 304 F. Supp. 2d at 283; *Holmes Group*, 249 F. Supp. 2d at 16-17; *GT Plus*, 41 F. Supp. 2d at 425-27. These circumstances clearly do not describe a "race to the courthouse solely to obtain a preferred forum," even were TransCanada the "defendant" in this action (which it is not). *See Feinstein*, 304 F. Supp. 2d at 281-83 (finding on similar facts that even a defendant filing during dispute resolution discussions had not improperly rushed to the courthouse, and ruling in favor of the defendant's first-filed action); *Holmes Group* 249 F. Supp. 2d at 14, 16-17, (finding that even a natural defendant filing during dispute-related correspondence did not improperly "react to notice of imminent filing by literally sprinting to the courthouse", and ruling in favor of the defendant's first-filed action); *see also GT Plus,* 41 F. Supp. 2d at 423-24, 425-27 (putative defendant filing in the midst of settlement dialogue and even upon threats of litigation did not improperly race to the courthouse, and hence its first-filed action was proper). The main case cited by Narragansett, *Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63 (D.R.I. 1999), is markedly distinguishable from the present case. In that case, the first-filing party (the putative defendant) affirmatively misled the second-filing party (the putative plaintiff) into waiting for an imminent response before rushing to the courthouse the very next day to file a declaratory judgment action. *See id.* at 65-66, 70. Notably, the party that "rushed to the courthouse" in *Nortek* was not the

natural plaintiff, but rather was the natural defendant filing a defensive, declaratory judgment action solely to obtain its preferred forum. *Id.* That is not the case here for several reasons.

In sum, as the Court stated in *Feinstein*:

> [TransCanada] neither misled [Narragansett] into foreclosing litigation in order to negotiate a settlement and then filed suit, nor reacted to [Narragansett's] notice of imminent filing by "literally sprinting to the courthouse the same day." . . . [TransCanada] was not obligated to continue what, in [its] view, was a fruitless negotiation before coming to court.

304 F. Supp. 2d at 283 (internal citation omitted). Accordingly, for any of several reasons, Narragansett has not overcome the strong presumption in favor of the first-filed Massachusetts Action on grounds of an alleged "race to the courthouse."

II. NARRAGANSETT HAS NOT SHOWN THAT THE PUBLIC INTEREST OR OTHER CONVENIENCE FACTORS OUTWEIGH THE PRESUMPTION IN FAVOR OF TRANSCANADA'S CHOICE OF FORUM

Again, it is *Narragansett's* burden to show that the balance of convenience sufficiently weigh in favor of a Rhode Island forum to warrant overriding the strong presumption in favor of this first-filed Massachusetts Action. (*See* Memo. to Enjoin, at 10-11.) Narragansett attempts to make this showing in two respects: First, Narragansett attempts to elevate one of the six convenience factors – the public interest – to a stand-alone argument that this Court should decline jurisdiction based solely upon the alleged interests of non-parties such as the Rhode Island regulatory authorities and the Rhode Island rate-paying public. Second, Narragansett alleges that a number of mostly irrelevant factual connections between Narragansett and Rhode Island support overriding the first-filed rule. Neither of these arguments has merit.[6]

---

[6] Narragansett is also incorrect that the parties' choice of Massachusetts law to govern the WSOS Agreement does not favor a Massachusetts forum. (Opp. Mem. at 19.) As stated in *Paradis v. Dooley*, 774 F. Supp. 79, 83 (D.R.I. 1991), "[i]t is advantageous to have the lawsuit adjudicated by a federal district court . . . that is more familiar with [the applicable state] law" (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964)); *cf. SW Indus.*, 653 F. Supp. at 639 (familiarity with state law was not a significant factor only because the parties had not specified the applicable law and several foreign laws might apply in either jurisdiction). Narragansett's argument that the application of

7

First, Narragansett cites no legal authority – nor can it – for the proposition that the indirect interests of non-party Rhode Island regulatory authorities and rate payers alone justifies retention of jurisdiction in Rhode Island. Indeed, these interests of Rhode Island rate payers in fact counsel *against* a Rhode Island forum, as there is a countervailing public interest in obtaining a non-interested jury pool and an objective forum for resolution of this dispute. Narragansett's heavy reliance upon the "public interest" is therefore misleading, as that factor actually counsels in large part against a Rhode Island forum, and certainly does not outweigh all the other factors favoring a Massachusetts forum. Indeed, if Narragansett's public interest argument were sufficient, then any time a contract claim were asserted against a regulated entity in a foreign jurisdiction, in which the dispute would arguably affect the public (and even where, as here, the contract was negotiated, executed, and administered in the foreign jurisdiction and governed by the foreign jurisdiction's law), the regulated entity could simply ignore the foreign action and successfully file a defensive, second-filed suit in its own forum in order to have the dispute decided by an interested jury pool. That cannot be a correct application of the law, and is not the way our legal system is intended to work as a matter of simple equity and fairness.

This case addresses a breach of contract dispute, under an Agreement that the parties expressly stated was to be governed by Massachusetts law. TransCanada asserts that Narragansett breached implied contractual obligations in that Agreement under Massachusetts law. The terms of the Agreement were negotiated, agreed upon and executed between TransCanada and Narragansett (actually, its predecessors) in Massachusetts. Both parties have administered the Agreement from Massachusetts. (Taylor Aff. ¶¶ 5-19; Hager Aff. ¶¶ 2-4, 6.)

---

Massachusetts law is inconsequential because "Massachusetts law concerning the interpretation of contracts is fairly clear" (Opp. Mem. at 19) is belied by the fact that Narragansett appears to dispute aspects of Massachusetts law central to this case, such as its obligation under the WSOS Agreement and Massachusetts contract law to make reasonable efforts to obtain regulatory approval for a fuel adjustment factor for TransCanada over the full term of the Agreement. (Compare Compl. ¶ 17; with Narragansett Answer ¶ 17.) A Massachusetts court should decide this central issue of Massachusetts law. *See also* TransCanada Motion to Enjoin, at 14, 15.

No claims by either party seek to regulate or set rates in Rhode Island, and neither the Rhode Island regulatory authorities nor the Rhode Island rate-paying public are parties to the WSOS Agreement or these two actions.

The Rhode Island regulatory authorities' "exclusive power" to set electricity rates in Rhode Island, as touted by Narragansett, is also irrelevant to this contract dispute. TransCanada is not asking for any particular rate to be charged to Rhode Island rate payers, nor for that matter would the Rhode Island District Court have any greater jurisdiction to decide that issue than would a Massachusetts District Court. Similarly, whether and to what extent Narragansett may seek reimbursement from Rhode Island rate payers for any damages awarded to TransCanada is not an issue before this Court. That is an issue between Narragansett and the Rhode Island regulatory authorities, proceedings to which TransCanada has never been a party. Finally, Narragansett also misleadingly refers to a statutory prohibition against termination of a wholesale supply agreement by "an electric distribution company" – here Narragansett. (See Opp. Mem. at 15.) Narragansett is not attempting to terminate the WSOS Agreement, and Narragansett notably (and correctly) does not assert that TransCanada needs regulatory approval to terminate the Agreement.

Indeed, the purported importance of this suit to Rhode Island consumers actually points *against* keeping the case in Rhode Island. In Rhode Island this suit would be heard by a jury of Narragansett ratepayers. Thus, there is a significant risk of bias against TransCanada. *See Long Island Lighting Co. v. New England Petroleum Co.*, 362 N.Y.S.2d 350, 355 (N.Y. Sup. Ct. 1974) (holding that a dispute concerning an energy contract should be transferred to a different county, as the judge and jury were all rate payers and could be biased). Whether or not this suit affects Rhode Island ratepayers, this suit is about one thing only – a contract to which neither the Rhode Island consumers or regulators are a party. If resolution of this issue is as critical to the people of

9

Rhode Island as Narragansett asserts, this Court should not risk a biased resolution by allowing it to be heard or tried before an interested jury in Rhode Island.

Notably, Narragansett is not able to cite a single case that supports jurisdiction in Rhode Island based solely upon the alleged interests of Rhode Island regulators or rate payers. The only case Narragansett is able to cite, *In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188 (E.D.N.Y. 1994), is simply off point. That case does not even address multiple filings in alternate forums; it arises from class action tort litigation; and the Court transferred the cased out of New York simply because New York bore absolutely no connection to the cases. See id.

Finally, Narragansett raises a number of additional connections between Narragansett and Rhode Island – notably by way of the affidavit of its *Massachusetts*-based "business lead" for the WSOS Agreement. (*See* Hager Aff. ¶¶ 2, 6; Taylor Affidavit ¶¶ 14-19). But the majority of these Rhode Island "connections" are irrelevant. For example: Narragansett touts its 470 employees in Rhode Island, but does not assert that these employees will be witnesses or have involvement in this case; Narragansett asserts that TransCanada's accounting services are performed by employees (actually an affiliate's employees) in Rhode Island, but does not assert that these accounting services or employees are at all relevant to this case; Narragansett mentions cross-default provisions in the related PPA Transfer Agreement (Narragansett Ex. D), but fails to mention that this PPA Transfer Agreement was between TransCanada and *a Massachusetts* affiliate of Narragansett, the Montaup Electric Company (*see* Narragansett Ex. D, at 1); and Narragansett points out that the RIPUC hearings are in Rhode Island, but omits mentioning the fact that the relevant RIPUC testimony on Narragansett's behalf was provided by Narragansett representatives from Massachusetts (*see* Taylor Affidavit, ¶¶ 11, 15; *and* Narragansett Exhibit A, at 4-6 (July 10, 1998 RIPUC Decision, citing testimony of Massachusetts employees of EUA Service Corporation on behalf of Narragansett)). Accordingly, the additional Rhode Island

10

"connections" asserted by Narragansett are irrelevant to this dispute, or actually support a Massachusetts rather than Rhode Island forum.

Finally, Narragansett's claims about the "exclusive" relationship between this dispute and Rhode Island, and the alleged need to have all contractual issues under the WSOS Agreement determined in Rhode Island, are belied by Narragansett's own actions. If it was so important that all matters relating to electricity delivery in Rhode Island be determined only in Rhode Island, Narragansett (and its predecessors) would not have: specified that the WSOS Agreement is to be governed by Massachusetts law; would not have negotiated and administered the WSOS Agreement from Massachusetts; would not have testified at the RIPUC concerning the WSOS Agreement exclusively through Massachusetts employees of Narragansett's Massachusetts affiliates; and would not have located Narragansett's customer service center in Massachusetts. (See Taylor Aff. at ¶¶ 4-7, 11-19.)

    Respectfully submitted,

    TRANSCANADA POWER MARKETING LTD.,

    By its attorneys,

    /s/ Wendy S. Plotkin
    Daniel C. Winston (BBO#562209)
    Wendy S. Plotkin (BBO#647716)
    Dara Y. Zelnick (BBO #660256)
    CHOATE, HALL & STEWART LLP
    2 International Place
    Boston, MA  02110
    Telephone No.:  (617) 248-5000
    Fax No.:  (617) 248-4000

October 7, 2005