UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | |
|---|---|
| TRANSCANADA POWER MARKETING LTD. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>NARRAGANSETT ELECTRIC COMPANY )<br>)<br>Defendant, )<br>)<br>) | C.A. No. 05-40076FDS |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff TransCanada Power Marketing Ltd. ("TransCanada"), respectfully submits this Memorandum of Law in support of its Motion for Leave to File Amended Complaint. In its proposed Amended Complaint, TransCanada adds: (1) a count for violation of Mass. Gen. Laws ch. 93A § 11 ("93A"); and (2) a count for rescission or reformation of contract (the Wholesale Standard Offer Service Agreement (the "WSOSA" or the "Contract")) based on material breach, misrepresentation and/or mistake.[1] These additional causes of action reflect evidence that has emerged in discovery, and are based upon the same underlying transactions or nucleus of facts as set forth in the original Complaint. TransCanada has not delayed in bringing these claims, the addition of these claims to the Complaint will not prejudice Narragansett, and the assertion of these claims would not be futile. For these reasons, and for others expressed more fully below,

---

[1] A copy of TransCanada's proposed Amended Complaint is attached as *Exhibit A* to its Motion for Leave to File Amended Complaint, and a redline showing the changes to the original Complaint is attached as *Exhibit B*.

1

4173329v2

TransCanada respectfully requests that its Motion for Leave to File Amended Complaint be allowed.

## FACTS

### The Dispute

Many of the material facts relevant to this dispute are already well known to this Court from past Motions. This action arises out of Narragansett's alleged breach of the pricing terms of the WSOSA, a contract executed by TransCanada and the EUA Companies ("EUA") (predecessors of Narragansett) on April 7, 1998. This dispute arose as a result of Narragansett's: (a) failure to file or attempt to obtain regulatory approval of a fuel adjustment ("Fuel Adjustment Factor") in its tariffs, and (b) resulting failure to pay TransCanada a Fuel Adjustment Factor after 2004. It is TransCanada's position that, at the time the parties entered into the WSOSA, it was the understanding and intent of EUA and TransCanada that EUA (and its successors) would file and seek to obtain approval of Standard Offer Service tariffs with a fuel adjustment through 2009, the term of the contract. It is Narragansett's position that the parties intended for EUA/Narragansett to file Standard Offer Service tariffs requesting a fuel adjustment only through 2004, rather than through the entire 2009 term of the Contract and Standard Offer Service in Rhode Island. TransCanada's original Complaint asserted claims for breach of contract, contractual indemnification, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

### The Procedural History

Discovery in this case is ongoing. It has been a long and tortuous road, due to delays in Narragansett's production of documents in response to TransCanada's discovery requests. TransCanada served its First Requests for the Production of Documents ("Document Requests")

2

4173329v2

on August 26, 2005. On October 18, 2005, Narragansett served its written responses. On November 1, 2005, TransCanada sent a letter to Narragansett expressing its concerns related to Narragansett's responses. TransCanada again wrote to Narragansett on December 21, 2005. On February 1, 2006, TransCanada filed a Motion to Compel Production of Documents.

On August 17, 2006, Magistrate Judge Hillman issued an order granting in large part TransCanada's motion to compel. In response to Judge Hillman's order (which the parties acknowledged would result in the production of a large volume of documents), the parties entered a joint motion to modify the Court's scheduling order to allow for the production of documents by Narragansett. In this Joint Motion, the parties agreed that Narragansett's supplemental production would be complete by October 18, 2006. (*See* Joint Motion to Modify Scheduling Order at 2).

In late October, TransCanada finally received what was purported to be Narragansett's supplemental production in response to the Court's Order. It consisted of 29,242 pages. After a careful review of this production, however, TransCanada determined that several categories of documents still had not been produced despite the Court's Order requiring their production. On November 17, 2006, TransCanada sent a letter to Narragansett demanding that all documents covered by the Court's Order be produced. On December 12, 2006, and after consulting with TransCanada, Narragansett filed an assented to emergency motion to modify the Court's scheduling order. As grounds for its motion, Narragansett explained that "[in] response to concerns raised by Plaintiff as to the completeness of Narragansett's document production, Narragansett has recently located over forty boxes of documents which appear to be likely to contain information responsive to Plaintiff's document requests and this Court's discovery order." (*See* Defendant's Assented to Emergency Motion to Modify Scheduling Order at 1).

TransCanada received electronic productions of these documents from late December and into early January. These productions consisted of 117,289 pages. After working long and extra hours, TransCanada completed its review of Narragansett's production in late January 2007.

After receiving and reviewing Narragansett's document production, TransCanada was finally able to conduct its first depositions. On January 27th and January 30th, 2007, TransCanada conducted its first two depositions of former officers of the EUA Companies (these depositions had been previously scheduled but had to be postponed due to Narrgansett's late discovery of additional documents).

Based on evidence that emerged in these depositions and from the documents produced by Narragansett in December 2006 and January 2007, TransCanada determined that there is a good faith basis to assert a claim under 93A, as well as a claim for rescission or reformation of the Contract based on material breach, mistake and/or misrepresentation. Thus, TransCanada has promptly brought its Motion for Leave to File an Amended Complaint.

As of this date, no depositions of any TransCanada witnesses have yet taken place and none are scheduled until March 12, 2007. Similarly, no depositions of current employees of Narragansett will take place until March 2, 2007. Moreover, since each of the additional claims asserts causes of action based upon the same underlying transaction and nucleus of facts already at issue in the litigation, no additional document discovery is necessary.

## ARGUMENT

### I.   THE APPLICABLE STANDARD

Fed. R. Civ. P. 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." This policy of permitting liberal amendment is consistent with the spirit of the Federal Rules, which favors deciding controversies on the merits, rather than on the

technicalities of pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962), *see also Martin v. Sands*, 62 F. Supp. 2d 196, 198 (D. Mass. 1999). The Court of Appeals for the First Circuit has held that, unless it can be demonstrated that the amendments would be futile or that there has been undue delay resulting in prejudice, leave to amend should be granted. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 622 (1st Cir. 1996) (an amendment is futile if it "fails to state a claim upon which relief can be granted," and unduly delayed and prejudicial where amendment would require reopening discovery or a change in the opposing party's trial strategy). "Amendments should be granted unless the court finds an inordinate measure of undue delay, dilatory motive, futility, or undue prejudice." *Martin*, 62 F. Supp. 2d at 198.

## II. TRANSCANADA'S MOTION TO AMEND SHOULD BE ALLOWED BECAUSE TRANSCANADA HAS NOT DELAYED IN BRINGING THIS MOTION, NO PREJUDICE WILL RESULT TO NARRAGANSETT, AND TRANSCANADA'S NEW CLAIMS ARE NOT FUTILE.

### a. TransCanada Has Not Delayed In Bringing This Motion.

TransCanada has not delayed in bringing this motion. TransCanada's new claims are prompted by its review of Narragansett's production completed only as of Early January 2007, and from the initial depositions conducted by TransCanada on January 27, 2007 and January 30, 2007. TransCanada has been cognizant of its obligations to have a good faith basis for its claims, and was not fully able to evaluate the need and basis for its additional claims until it was able to complete its review of the large number of boxes of documents produced by Narragansett and until it had the opportunity to conduct some initial depositions. Notably, TransCanada brings this motion a mere four weeks after Narragansett completed its production of documents and just over two weeks after it was able to take some initial depositions.

The case law supports the reasonableness of TransCanada's motion at this time. In *Pickler International, Inc. v. Leavitt*, for example, the plaintiff moved to amend its complaint

5

after the scheduled end-date of discovery based on information uncovered late in the discovery process. 128 F.R.D. 3, 5 (D. Mass. 1989). The court allowed the motion noting that the plaintiff appeared to have acted promptly to amend the complaint once discovery revealed a proper factual basis for the new allegations. *Id.* at 9. Likewise, in *Abel v. AT&T*, the court allowed the plaintiff to amend its complaint where the motion to amend followed shortly after the production of the documents that were required for the plaintiff to "fully appreciate the need" to add a certain claim to her complaint. No. 01-30218-FHF, 2003 LEXIS at *7 (D. Mass. April 30, 2003).

In the instant case, TransCanada brings this motion just four weeks after Narragansett completed its production of documents and just over two weeks after TransCanada was able to complete some initial depositions. Were it not for Narragansett's own repeated failure to produce the documents required by TransCanada's Document Requests and subsequently by this Court's order, TransCanada would have been in a position to assess additional possible claims months (if not more than a year) ago. Because TransCanada has brought this motion promptly upon the receipt of the documents responsive to its original Document Requests and promptly after its first ability to take depositions with the benefit of full document production, TransCanada cannot be said to have delayed unnecessarily in moving to amend its Complaint. Nor could Narragansett fairly or equitably contend that it has done so.

**b. Narragansett Would not be Prejudiced by TransCanada's Proposed Amendments.**

TransCanada's proposed amendments will not prejudice Narragansett. The First Circuit has held that a district court may deny leave to amend where: "(1) discovery would have to be reopened after the accumulation of an extensive and expensive record and after the legal issues involved had already been developed; (2) the additional allegations contained no newly

discovered evidence of facts of a different character that would change [the] basic claims; and (3) the threshold issue of justifiable reliance would still prove an insurmountable obstacle to recovery." *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 806 (1st Cir. 1987); *see also Abel*, 2003 U.S. Dist. LEXIS at *8. Not one of these factors is present in this case.

First, discovery in the instant case is on-going. In fact, Narragansett has yet to depose a *single witness*. Nor have any of Narragansett's current employees been deposed. Second, the evidence which has led TransCanada to believe that it has a good faith basis to assert the new claims was uncovered through its review of the document production completed by Narragansett only as of early January 2007, and from initial depositions taken by TransCanada only late in January 2007. Third, Narragansett can in no way be prejudiced by the added claims since the new claims are simply additional theories for relief based upon the same basic nucleus of facts and transactions already alleged in TransCanada's previous claims. *See Exhibit B* to TransCanada's Motion for Leave to File Amended Complaint.[2] No additional document production will be required since Narragansett has already had the opportunity to obtain discovery on all of the basic factual circumstances. Additionally, Narragansett will have ample opportunity to conduct its own depositions in light of the new claims and will have the opportunity to develop its trial strategy in light of the Amended Complaint.

    **c.**    **The Additional Claims Would Not be Futile.**

        **1. Adding a Claim Under 93A Would Not be Futile**

Adding a claim for violation of Mass. Gen. Laws ch. 93A § 11 would not be futile because TransCanada properly states a claim for which relief could be granted. Chapter 93A

---

[2] Although TransCanada has also highlighted in the Amended Complaint certain Massachusetts connections that were previously known, the added allegations which support amendment at this time are based upon newly discovered information about the nature of Narragansett's plans, intent and activities.

7

prohibits unfair or deceptive acts or practices among those engaged in commerce. Mass. Gen. Laws ch. 93A § 11. In order to be subject to 93A, the alleged deceptive acts or practices must have occurred "primarily and substantially" within Massachusetts. Mass. Gen. Laws ch. 93A, § 11.[3]

In its Amended Complaint, TransCanada has alleged facts sufficient to support a claim under 93A. TransCanada has alleged that Narragansett knowingly and intentionally engaged in a scheme to breach the WSOSA and to deceive TransCanada into believing that it would perform a certain way under the WSOSA. (*See* Amended Complaint ¶¶ 25-34, 58). TransCanada has further alleged that Narragansett not only failed to perform its duties under the contract, but also acted in bad faith and purposefully misled TransCanada into believing that it would continue to fulfill its contractual duties for the entire term of the contract to secure the improper benefits of its breach. (*Id.*). These allegations clearly support a claim under 93A. *See Diamond Crystal Brands, Inc. v. Backleaf, LLC*, 60 Mass. App. Ct. 502, 507 (2004); *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1385-86 (1st Cir. 1991).[4]

Additionally, there can be no question that Narragansett's actions took place in the conduct of trade or commerce, and that its acts are sufficiently alleged to have occurred primarily and substantially in Massachusetts. First, the commercial nature of the agreement is indisputable as the WSOSA is a commercial agreement between two large corporations. Second, while there

---

[3] There can be no dispute that the Massachusetts unfair and deceptive trade practices statute (rather than a similar Rhode Island statute) governs this dispute. It is well-established that where, as here, a chapter 93A claim is contractually based, the parties' contract's choice-of-law provision will govern which state's law will apply. *See Value Partners S.A. v. Bain & Co.*, 245 F. Supp. 2d 269, 274 (D. Mass. 2003). In this case, the WSOSA dictates that Massachusetts law governs the contract. Thus, Massachusetts trade practices statutes such as 93A will be applied provided statutory prerequisites are met. *Id.*

[4] While it is true that not every breach of contract constitutes an unfair or deceptive trade act or practice for the purposes of Chapter 93A, *see City of Revere v. Boston v. Boston/Logan Airport Associates, LLC*, 416 F. Supp. 2d 200, 208-9 (D. Mass. 2004), conduct in disregard of known contractual arrangements and intended to secure benefits

8

4173329v2

are certainly connections between the WSOSA and Rhode Island, there are also many connections to Massachusetts. In its Amended Complaint, TransCanada alleges that all relevant communications, misrepresentations and misleading statements made by Narragansett to TransCanada were planned and made by Narragansett representatives in and from Massachusetts. (Amended Complaint ¶ 60). Indeed, as this Court correctly noted in its Memorandum and Order on Plaintiff's Motion to Enjoin Prosecution and Defendant's Motion to Transfer Venue and to Stay: "The connection between Massachusetts and the issues presented in this case is substantial. TransCanada has a place of business in the Commonwealth; the Contract was largely negotiated here; the Contract was signed here; and its terms are governed by Massachusetts law. Moreover, defendant also has an office in Massachusetts . . . ." (*See* Memorandum and Order on Plaintiff's Motion to Enjoin Prosecution and Defendant's Motion to Transfer Venue and to Stay at 12). Under these facts, it would not be futile for TransCanada to assert a claim under 93A.

Finally, even if Narragansett were to dispute this issue, it is well-established that the question of whether or not conduct giving rise to a claim under 93A took place primarily and substantially in Massachusetts is a question of law as to which defendants bear the burden. *See Korpacz v. Women's Professional Football League*, No. 04-10735-RWZ, 2006 U.S. Dist. LEXIS 3154, at *24 (D. Mass. January 27, 2006) (citing *Zyla v. Wadsworth, Division of Thomson Corp.*, 360 F. 3d 243, 255 (1st Cir. 2004)); *see also* Mass. Gen Laws ch. 93A § 11, par. 8 ("For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth"). Moreover, the decision as whether "the center of gravity of the circumstances that give rise to the

---

for the breaching party is actionable under the statute. *See Diamond Crystal Brands* 60 Mass. App. Ct. at 507. TransCanada has alleged facts sufficient to support a claim under 93A under this paradigm.

9

claim is primarily and substantially within the Commonwealth" must be made on the basis of specific factual findings. *Workgroup Tech. Corp. v. MGM Grand Hotel*, 246 F. Supp. 2d 102, 118 (D. Mass. 2003) (citing *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 473 (2003)). Courts have concluded that a motion to dismiss is "no longer an appropriate vehicle for raising the issue" of whether the conduct giving rise to the 93A claim occurred primarily and substantially in Massachusetts. *Workgroup Tech. Corp.*, 246 F. Supp. 2d at 118 (citing *Kuwaiti Danish* 438 Mass. at 473 (2003)). Therefore, Narragansett cannot defeat TransCanada's motion to amend the Complaint to add a claim under 93A on grounds that the alleged conduct giving rise to the claim did not occur, as alleged, primarily and substantially in Massachusetts.

### 2. Adding a Claim for Rescission and/or Reformation Would Not be Futile.

Similarly, it would not be futile for TransCanada to amend the Complaint to add a claim for rescission and/or reformation of the WSOSA based on material breach, misrepresentation and/or mistake. As an initial matter, TransCanada would be entitled to ask the Court to rescind and/or reform the WSOSA even if TransCanada never explicitly demanded such relief in its Complaint. *See* Fed. R. Civ. P. 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings").[5] TransCanada's proposed amendment of the Complaint to add a claim for rescission and/or reformation of the WSOSA simply makes it absolutely clear, for the benefit of the parties and the Court, that the "other and further relief" which TransCanada already

---

[5] For similar reasons, TransCanada has not highlighted herein certain changes to its requests for relief in other counts of the Amended Complaint (See *Exhibit B*), which simply more clearly state that Narragansett's failure to notify TransCanada of its intent to end the Fuel Adjustment Factor (as previously alleged) also constituted breaches of the WSOS Agreement.

10

4173329v2

requested in its Complaint can and should include rescission and/or reformation of the Contract in the circumstances of this case. In its Amended Complaint TransCanada has alleged facts sufficient to support a claim for rescission on grounds of material breach, and, in the alternative, a claim for rescission or reformation on grounds of misrepresentation and/or mistake.

First, Massachusetts law (which governs the WSOSA) expressly recognizes rescission as an available remedy in cases involving a material breach of contract. *Lease-It, Inc. v. Mass. Port Auth.*, 33 Mass. App. Ct. 391, 397 (1992); *Ward v. American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100-01 (1983) ("It is well established that a material breach by one party excuses the other party from further performance under the contract.") (multiple citations omitted). Assuming that TransCanada proves that Narragansett materially breached the WSOSA, (as it will), TransCanada would be entitled to ask the Court to rescind the WSOSA

In the alternative, TransCanada has alleged facts sufficient to support a claim for rescission or reformation based on mistake and/or misrepresentation. It is well established that rescission or reformation is an available remedy in a contract action when one party is mistaken (or both parties are mistaken) as to a material, essential fact within the contract, or when one party knew or should have known that the other party was mistaken as to a material essential fact within the contract. *See, e.g., La Fleur v. Pierce Co.*, 398 Mass. 254, 257-58 (1986) ("Where there has been a mistake between the parties as to the subject matter of a contract, there has been no 'meeting of the minds,' and the contract is voidable at the election of the party adversely affected.") (citation omitted); *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 756 (1993) ("If the language of a written instrument does not reflect the true intent of both parties, the mutual mistake is reformable . . . . The mistake must be mutual . . . or be made by one party and known to the other party . . . .") (internal citations omitted); *Hashway v. CIBA-Geigy Corp.*,

755 F.2d 209, 211 (1st Cir. 1985) (explaining the rationale for reformation on grounds of mistake and noting "A mistake by one party with knowledge thereof by the other party is equivalent to a mutual mistake; a party should not be benefitted by a mistake he know the other had made.") (multiple citations omitted); *Les Construction Beauce Atlas, Inc. v. T.R. White Co.*, No. 95354, 2006 Mass. Super. LEXIS 455 at *7 (Mass. Super. Ct., August 28, 2006). As grounds for its claim, TransCanada has alleged: (1) that Narragansett misled TransCanada into believing that it would continue to obtain regulatory approval of a Fuel Adjustment Factor throughout the term of the Contract and would continue to pay a Fuel Adjustment Factor to TransCanada for the entire term of the Contract; and (2) that Narragansett through its acts and omissions caused, and was aware or should have been aware, that TransCanada mistakenly believed that Narragansett planned to and would continue to obtain regulatory approval of a Fuel Adjustment Factor throughout the term of the Contract. (*Id.* ¶ 48-49). TransCanada has alleged that this mistake caused by Narragansett as to Article V of the WSOSA was material and essential to the WSOSA, and that, had TransCanada been aware of Narragansett's plan, TransCanada would not have signed the WSOSA. (*Id.*). Under these facts, TransCanada has sufficiently stated a claim for rescission and/or reformation of the WSOSA.

## CONCLUSION

For the foregoing reasons, TransCanada respectfully requests leave to file an Amended Complaint in the form attached to its Motion for Leave to File Amended Complaint on as *Exhibit A*.

Respectfully submitted,

TRANSCANADA POWER MARKETING LTD.

By its attorneys,

/s/ Dara Z. Kesselheim
Daniel C. Winston (BBO#562209)
Wendy S. Plotkin (BBO#647716)
Dara Z. Kesselheim (BBO# 660256)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA  02110
Tel. (617) 248-5000
Fax (617) 248-4000

13

4173329v2