UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

| | | |
|---|---|---|
| TRANSCANADA POWER MARKETING LTD., | ) ) ) | C. A. No. 05-40076-FDS |
| | ) | (Michael P. Angelini, #019340) |
| Plaintiff, | ) | (Vincent F. O'Rourke, Jr., #380335) |
| | ) | (Daniel P. Flynn, #655180) |
| v. | ) ) | |
| NARRAGANSETT ELECTRIC COMPANY, | ) ) ) | |
| Defendant. | ) | |

**CONCISE STATEMENT OF UNDISPUTED MATERIAL FACT
IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON COUNT II OF THE AMENDED COMPLAINT**

Pursuant to Local Rule 56.1, Defendant, The Narragansett Electric Company ("Narragansett"), submits this Concise Statement of Material Fact in Support of its Motion for Partial Summary Judgment on Count II of TransCanada Power Marketing Ltd.'s ("TransCanada") Amended Complaint.

**Undisputed Material Facts**

1.  Narragansett is a specially chartered Rhode Island public utility corporation with its principal place of business in Rhode Island. It is an electric distribution company whose charter permits it to deliver electricity over its wires to retail customers in thirty-eight Rhode Island cities and towns, with a population of over 1 million people. Affidavit of Michael J. Hager, ¶ 5.[1]

---

[1] The Affidavit of Michael Hager was previously filed in Opposition to TransCanada's Motion to Enjoin Narragansett from prosecuting an action in Rhode Island. It is attached as Exhibit A to the Affidavit of Daniel Flynn, ("Flynn Aff.") being filed with this Opposition. The Further Affidavit of Michael Hager in Support of

2.      In May of 2000, Blackstone Valley Electric Company and Newport Electric Corporation were merged into and with Narragansett, which was subsequently acquired by National Grid USA.  Further Hager Aff., ¶¶ 1-2.

3.      On April 7, 1998, TransCanada Power Marketing Ltd. ("TransCanada") and Montaup Electric Company ("Montaup") entered into an Asset Purchase Agreement.  Under the Asset Purchase Agreement, TransCanada (1) purchased rights and obligations under a power purchase agreement between Montaup and the Ocean State Power ("OSP") generation station in Burrillville, Rhode Island; (2) entered into a Transfer Agreement to effectuate the OSP purchase power obligations; and (3) agreed to supply a specific percentage share of electricity required by Blackstone and Newport to serve their Rhode Island customers.  In connection with its supply obligation, TransCanada entered into the Wholesale Standard Offer Service Agreement (the "WSOSA") between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and itself[2].

4.      Blackstone and Newport (now Narragansett) were obligated to pay a Fuel Adjustment Factor ("FAF") to TransCanada, as that FAF was to be reflected in their retail tariffs.  Further Hager Aff., ¶ 4.  The FAF is an added charge paid by ratepayers which TransCanada would receive if fuel costs exceeded certain levels.  Blackstone and Newport's obligation to make payments under the FAF was conditioned upon the RIPUC approving the FAF in their tariffs.  Id.; Flynn Aff., Exhibit C ("WSOSA"), Article 5.

5.      Shortly after the WSOSA was executed, Blackstone and Newport filed identical retail tariffs that contained the FAF.  Further Hager Aff., ¶ 4.  By its terms, the FAF in those

---

Defendant's Motion for Summary Judgment is also being filed in support of this Motion and is referenced herein as "Further Hager Aff."

[2] The Asset Purchase Agreement is attached to the Flynn Affidavit as Exhibit B and the WSOSA Agreement is attached to the Flynn Affidavit as Exhibit C.

tariffs commenced in the year 2000 and expired after 2004.  Flynn Aff., <u>Exhibit</u> <u>D</u>.[3]  There were no provisions in the tariffs that provided for extending the FAF beyond 2004.  Further Hager Aff., ¶ 5.  These retail tariffs were approved by the RIPUC by order issued July 10, 1998.  Flynn Aff., <u>Exhibit</u> <u>E</u>.

6. In anticipation of the pending merger of Narragansett, Blackstone and Newport, by letter dated February 8, 2000, Narragansett informed TransCanada that it would pay an FAF consistent with Blackstone and Newport's RIPUC-approved retail tariffs.  Flynn Aff., <u>Exhibit</u> <u>F</u>.  Accordingly, Narragansett attached to the correspondence a schedule containing a fuel adjustment for each year from 2000 through 2004.  Affidavit of Michael J. Hager, ¶ 6.  Narragansett sent this letter to TransCanada in draft form and asked TransCanada to review it.  <u>Id.</u>  Representatives from TransCanada and Narragansett communicated regarding the letter, and TransCanada voiced no objections to the contents of the letter.  Flynn Aff., <u>Exhibit</u> <u>G</u> (Deposition of Hager), pp. 114-116.

7. On April 18, 2000, Narragansett put the draft letter in final form and sent it to TransCanada.  Flynn Aff., <u>Exhibit</u> <u>H</u>.

8. Article 8(3) of the WSOSA provides as follows:

> In the event that the Standard Offer Service or the Terms and Conditions for Suppliers are terminated, amended or replaced by any governmental or regulatory agency having jurisdiction over the provision of Standard Offer Service in a manner which materially increases Supplier's costs or obligations to provide Standard Offer Service, the Companies shall promptly reimburse Supplier for any such costs or increased obligations or otherwise provide relief reasonably acceptable to supplier to or indemnify the Supplier from such changes. In such

---

[3] While the filing was made on April 15, 1998 (Flynn Aff., <u>Exhibit</u> <u>D</u>), the standard offer service tariff containing an FAF expiring after 2004 was virtually identical to a proposed standard offer service tariff that had been filed at the RIPUC in November of 1997.  At that time, however, the RIPUC delayed approval.  Instead, the RIPUC put interim tariffs into effect and required Blackstone and Newport to put the standard offer out to bid before approving any standard offer tariffs.  Once the bidding process was completed, Blackstone and Newport refiled on April 15, 1998.  The discussion of this filing history also is contained in the RIPUC's order issued July 10, 1998. <u>See July 10, 1998 Order</u> (Ex. 72), attached as <u>Exhibit E</u> to the Flynn Affidavit.

3

event the Companies and Supplier shall meet to determine the amount to be reimbursed to Supplier. In the event that the Parties are not able to agree on the materially [sic] of the increased costs or obligations or the amount to be reimbursed, the Parties shall attempt to resolve the matter in accordance with Article 12 and failing resolution in accordance with Article 12, either Party may terminate this Agreement on sixty (60) days written notice to the other Party, such termination to be effective as of the date specified in such notice.  WSOSA, Article 8(3).

9.  A change in the amount or availability of an FAF does not materially increase any costs or obligations to TransCanada, as the FAF does not affect the price TransCanada pays for fuel or its expenses in providing fuel to customers.  Further Hager Aff., ¶ 10.  Instead, the FAF is a revenue provision which entitles TransCanada to increased payments when fuel costs exceed stipulated levels.  Id., ¶¶ 9 and 10.  It does not affect costs or obligations to provide Standard Offer Service.  Id.

10.  Article 8(3) was required by and drafted by TransCanada's representatives and its counsel.  See Flynn Aff., Exhibit I (Deposition of Pourbaix, p. 194) and Exhibit J (Deposition of McMaster, pp. 59-60.)

11.  TransCanada's senior bargaining representative, Alexander Pourbaix, initially proposed that a provision be added providing that, "In the event that the Price increases as a result of the decision of any regulatory body having jurisdiction over Standard Offer Service, such increase shall be paid to Supplier [TransCanada] by the Companies."  Pourbaix Dep. p. 194 and Dep. Exhibit 54 (Bates Number: TCPM 07195).  This focus on money to be paid to TransCanada changed in subsequent drafts to the ultimate language which was designed to address increases only in costs or obligations.  Id., pp. 194-197.  Mr. Pourbaix testified, "It was drafted very broadly to ensure that if anything changed . . . we would be held harmless for it in the future. . . . [I]f there was a subsequent change in the fixed price of power under the standard

4

offer service agreement, we did not want to be held responsible for that, and hence the insertion of the 8(3) language." Id., p. 197. (Emphasis added.)

 

NARRAGANSETT ELECTRIC COMPANY,

By its attorneys,

/s/ Vincent F. O'Rourke, Jr.
Michael P. Angelini (BBO #019340)
Vincent F. O'Rourke, Jr. (BBO #380335)
Daniel P. Flynn (BBO# 655180)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA  01615-0156
Tel: (508) 926-3511
Fax: (508) 929-3035
vorourke@bowditch.com

## CERTIFICATE OF SERVICE

    I, Vincent F. O'Rourke, Jr., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the 15th day of August, 2007.

                                               /s/ Vincent F. O'Rourke, Jr.
                                               Vincent F. O'Rourke, Jr.