UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

Civil Action No. 05-40076FDS

| | |
|---|---|
| TRANSCANADA POWER MARKETING LTD. | ) |
| Plaintiff, | ) |
| v. | ) |
| THE NARRAGANSETT ELECTRIC COMPANY | ) |
| Defendant. | ) |

**FURTHER AFFIDAVIT OF MICHAEL HAGER IN SUPPORT OF THE MOTION OF THE NARRAGANSETT ELECTRIC COMPANY FOR SUMMARY JUDGMENT**

I, Michael Hager, being sworn under oath depose and state as follows:

1.   I am the Vice President for Energy Supply New England, National Grid USA. The Narragansett Electric Company ("Narragansett") is a wholly-owned subsidiary of National Grid USA. I am the responsible executive for the Wholesale Standard Offer Service Agreement ("WSOSA") between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and TransCanada Power Marketing Ltd. ("TransCanada") which is at issue in this litigation. I make this Affidavit in support of Narragansett's Motion for Partial Summary Judgment Dismissing Count II of TransCanada's Amended Complaint.

2.   Oversight of the WSOSA became my responsibility in May of 2000 when Blackstone Valley Electric Company and Newport Electric Corporation were merged into and with Narragansett, which was subsequently acquired by National Grid USA.

3. Under the terms of the WSOSA, Blackstone and Newport purchased electric power from TransCanada for delivery to their Rhode Island customers. The price both companies paid to TransCanada for the delivered energy was set forth in paragraph 5 of the WSOSA.

4. Under the terms of paragraph 5 of the WSOSA, Blackstone and Newport were obligated to pay a Fuel Adjustment Factor ("FAF") to TransCanada to the extent that an FAF was contained in retail tariffs approved by the Rhode Island Public Utility Commission ("RIPUC") and fuel prices exceed levels established in such tariffs.

5. An FAF provision was contained in all retail tariffs pertaining to the WSOSA which were filed by Blackstone and Newport until the companies merged with Narragansett in 2000. The term of the FAF period in those tariffs was in all cases through 2004. This was consistent with various filings by Blackstone and Newport at RIPUC and the Federal Energy Regulatory Commission ("FERC").

6. In May 2000 when Narragansett became the retail electric supplier and distribution company to Blackstone and Newport's customers, I sent a letter to all wholesale standard offer service electric suppliers, including TransCanada, informing them that Narragansett had assumed the obligations of Blackstone and Newport with regard to the WSOSA and similar agreements with other suppliers. I attached a schedule to this letter containing an FAF for each year from 2000 to 2004.

7. TransCanada's Amended Complaint in this case complains that Narragansett's position that TransCanada's right to an FAF ended in 2004 violates the WSOSA.

8. I am aware that one of TransCanada's claims in this case is that it is entitled to relief pursuant to Article 8.3 of the WSOSA. Paragraph 8.3 provides as follows:

> In the event that the Standard Offer Service or the Terms and Conditions for Suppliers are terminated, amended or replaced by any governmental or regulatory agency having jurisdiction over the provision of Standard Offer Service in a manner which materially increases Supplier's costs or obligations to provide Standard Offer Service, the Companies shall promptly reimburse Supplier for any such costs or increased obligations or otherwise provide relief reasonably acceptable to supplier to or indemnify the Supplier from such changes. In such event the Companies and Supplier shall meet to determine the amount to be reimbursed to Supplier. In the event that the Parties are not able to agree on the materially [sic] of the increased costs or obligations or the amount to be reimbursed, the Parties shall attempt to resolve the matter in accordance with Article 12 and failing resolution in accordance with Article 12, either Party may terminate this Agreement on sixty (60) days written notice to the other Party, such termination to be effective as of the date specified in such notice.

9. In my capacity as the Vice President of National Grid USA I am familiar with and responsible for the company's interaction with and monitoring of the activities of the Rhode Island Public Utility Commission in so far as they are applicable to the WSOSA and Narragansett's retail tariffs. As of this date neither the "Standard Offer Service [nor] the Terms and Conditions for Suppliers [have been] terminated, amended or replaced by any governmental or regulatory agency having jurisdiction over the provision of Standard Offer Service in a manner which materially increases [TransCanada's] costs or obligations to provide Standard Offer Service" under the WSOSA as required to trigger obligations to TransCanada under paragraph 8.3 of the WSOSA. As of this date, no actions have been taken by the Rhode Island Public Utility Commission or any other governmental or regulatory agency which entitles TransCanada to be reimbursed or otherwise provided relief or indemnification pursuant to Article 8.3 of the WSOSA.

10. Narragansett's position is that the expiration of the FAF at the end of 2004 would cause TransCanada to receive lower revenue for the power supplied to Narragansett than it

would have received if an FAF were payable. However, the absence of an FAF does not in any way increase TransCanada's costs or obligations. To the contrary, TransCanada's costs and obligations arise from the performance of its obligations under the WSOSA and they are not increased by the loss of the additional revenue associated with the FAF.

Signed to and sworn under the pains and penalties of perjury this 14th day of August, 2007.

Michael Hager