UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

(CENTRAL DIVISION)

TRANSCANADA POWER                )
MARKETING LTD.,                  )          C.A. NO. 05-40076-FDS
      Plaintiff,                 )
                                 )          (Michael P. Angelini, #019340)
v.                               )          (Vincent F. O'Rourke, Jr., #380335)
                                 )          (Daniel P. Flynn, #655180)
NARRAGANSETT ELECTRIC            )
COMPANY,                         )
      Defendant.                 )

**NARRAGANSETT ELECTRIC COMPANY 'S REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

(Leave to File Reply Granted on October 4, 2005)

Defendant, The Narragansett Electric Company ("Narragansett"), submits this Reply to

the Opposition of TransCanada Power Marketing Ltd. to Narragansett's Motion for Partial

Summary Judgment on Count II of TransCanada Power Marketing Ltd.'s ("TransCanada")

Amended Complaint.   By this Reply, Narragansett addresses TransCanada's disingenuous

argument concerning the words "costs or obligations" in Article 8(3) of the Wholesale Standard

Offer Service Agreement ("WSOSA") and clarifies TransCanada's mischaracterization of

deposition testimony cited in its Opposition.

Article 8.3 states that TransCanada is entitled to indemnification only if "the Standard

Offer Service or the Terms and Conditions for Suppliers are terminated, amended, or replaced by

any governmental or regulatory agency . . . in a manner which <u>materially increases [its] costs or

obligations to provide standard offer service</u>." (<u>Emphasis added</u>.)  Narragansett has moved for

summary judgment on TransCanada's claims under Article 8(3) on the grounds that the lack of a

1

{Client Files\LIT\304810\0001\PLD\00992512.DOC;2}

Fuel Adjustment Factor ("FAF") for the years after 2004 did not materially increase any costs or obligations of TransCanada, as the FAF does not affect the amount TransCanada pays its suppliers for fuel or its expenses in providing electricity to its customers.  Rather, the FAF is a revenue provision which, when applicable, entitled TransCanada to increased payments from Narragansett when fuel costs exceeded stipulated levels.  Further Hager Aff. ¶¶ 4, 9.

1.    **TransCanada's Increase in Fuel Cost Is Not Attributable to a Termination, Amendment, or Replacement of the Standard Offer Service or the Terms and Conditions for Suppliers by Any Governmental or Regulatory Agency.**

TransCanada's Opposition states that "extraordinarily high fuel prices after 2005 have in fact materially increased the costs to TransCanada of supplying Standard Offer Service electricity under the Agreement" and that, without an FAF, "TransCanada is forced to bear these increased costs to supply Standard Offer Service entirely on its own."  (Plaintiff's Opp., at pp. 5-6, 10).  TransCanada's contention that Article 8(3) applies must fail because the additional costs it claims to have incurred admittedly result from "extraordinarily high fuel prices" and not from the alteration of any "Standard Offer Service or the Terms and Conditions for Suppliers by any governmental or regulatory agency."  Market forces, and not the Rhode Island Public Utilities Commission ("RIPUC"), control the price TransCanada pays for fuel and no change to the "Standard Offer Service or the Terms and Conditions for Suppliers" is alleged to or could have caused fuel prices to increase.

TransCanada is not entitled to indemnifications for market changes in the price of fuel or for governmental action which decreases the price it receives for the power it supplies.  Article 8(3) provides only for indemnification for increased "costs or obligations to provide services" caused by the actions of a "governmental or regulatory agency."  Since those events have not occurred, Count II of the Amended Complaint should be dismissed.

2

**2.      TransCanada Cannot Avoid Summary Judgment by Erroneously Equating Decreased Profit or Revenue with Increased Cost or Obligation.**

In order to claim indemnification under Article 8(3), TransCanada must show, among other things, that it incurred additional costs or obligations as a result of governmental or regulatory action.  In attempting to satisfy its burden, TransCanada ignores the distinction between revenue and expenses and claims that a reduction in its profits resulting from the absence of FAF payments is actually a cost or expense.  The Opposition untenably argues that because TransCanada's <u>profits</u> have decreased from the lack of FAF revenue, it has suffered increased costs or obligations.  (Plaintiff's Opp., at pp. 5-6.)  Such equivocation cannot be credited by this Court.[1]  Profits are, of course, measured by a company's revenues less its expenses.  <u>See</u> *Black's Law Dictionary* (1996).

The essential fallacy in TransCanada's argument is TransCanada's claim that its reduction in profits caused by a decrease in revenue from the lack of FAF payments is a material increase in costs or obligations, i.e., an expense.  The amount TransCanada pays for fuel is a cost or expense.  <u>See</u> <u>id.</u>  The payments TransCanada collects in connection with its sale of electricity, such as FAF payments from Narragansett, are revenue.  <u>See</u> <u>id.</u>  TransCanada's argument is erroneous because it uses "cost" in its ordinary sense meaning "expense" and also in the improper sense of a "reduction in profits."   A reduction in profit, including one caused by the absence of payments under an FAF, is not and cannot be a cost or expense.  It is simply a decrease in revenue.  To find otherwise would destroy any distinction between profit, revenue and expense and turn basic bookkeeping on its head.  Accordingly, TransCanada's attempt to

---

[1] TransCanada's equivocation is best illustrated by its argument in the final paragraph beginning on page 5 of its Opposition.  TransCanada first argues that increases in fuel prices have caused it additional costs, using "costs" in the sense of "expenses incurred."  Plaintiff then proceeds to argue that it has also incurred additional costs by having to "bear these increased costs…entirely on its own," thus using "costs" in the completely different sense of a "reduction in profits."

3

equate "cost" with any event that reduces TransCanada's profits (Plaintiff's Opp., at p. 10)

should be rejected by this Court.

The language of Article 8(3) is clear: TransCanada is entitled to indemnification only if

"the Standard Offer Service or the Terms and Conditions for Suppliers are terminated, amended,

or replaced by any governmental or regulatory agency . . . in a manner which materially

increases [its] costs or obligations to provide standard offer service." As there has been no

increase in its costs or obligations caused by any governmental or regulatory agency,

TransCanada's claim for indemnification should be dismissed as a matter of law.

**3.      TransCanada's Opposition Materially Misstates and Misrepresents the Testimony of the Deponents.**

TransCanada's Opposition manipulates the deposition testimony of witnesses by

selectively truncating quotations and mischaracterizing the contents of excluded testimony. For

the Court's convenience, Narragansett summarizes below the most egregious of these

misrepresentations in order to clarify the record evidence, which, properly quoted, supports

summary judgment in favor of Narragansett on Count II of the Amended Complaint.

TransCanada's Opposition states that Alex Pourbaix, TransCanada's employee who took

part in the negotiation of the WSOSA, "understood the language of Article 8(3) to cover… [a]

loss of a fuel adjustment" (Plaintiff's Opp., at pp. 11-12) and that he "specifically described how

[Article 8(3)] included a loss of the fuel adjustment." (Plaintiff's Opp., at p. 12). The

unabridged testimony of Pourbaix that Plaintiff cites directly and forcefully contradicts this

assertion. The full testimony from Pourbaix reads:

> At the time we negotiated [Article 8(3)], we were not at all having
> a discussion about what the fuel adder would or wouldn't be doing
> in the period 2005 to 2004. [sic]

4

> We were seeking a very general blanket protection against future regulatory or other changes that would harm the economics of the deal.
>
> It was not at all intended specifically to deal with the '05 to '09 presence or absence of the fuel adder.
>
> We would have requested this regardless.
> (Pourbaix, p. 203)

This testimony demonstrates that Pourbaix did not contemplate that the loss of an FAF was covered by Article 8(3) and that Pourbaix had no understanding that Article 8(3) had anything to do with the presence or absence of the FAF.

TransCanada's Opposition further cites to the testimony of Bill Taylor to support its claim that "the purpose of Article 8(3) was to protect TransCanada from regulatory filings that could have a negative impact on TransCanada, such as a loss of the fuel adjustment." (Plaintiff's Opp., at p. 12) However, the testimony cited by Plaintiffs again contradicts this assertion. On pages 71-73 and 164-65 of his deposition transcript, Taylor makes no mention of considering the FAF in drafting Article 8(3), and, in fact, names a host of other concerns instead. These concerns include alterations to the WSOSA's Standard Offer Services such as "inclusion of other services" and "customers maybe could be allowed to come back on to standard offer"—concerns that, unlike the presence of an FAF, fall squarely within the plain and ordinary meaning of regulatory action that could affect TransCanada's costs or obligations of supplying Standard Offer Services. (Taylor, p. 165.) In the testimony cited by TransCanada, Taylor makes no mention of any consideration of the FAF and offers no support for TransCanada's misleading characterization of his testimony.

5

## CONCLUSION

For the foregoing reasons, Narragansett's Motion for Partial Summary Judgment on

Count II of Plaintiff's Amended Complaint should be allowed.

NARRAGANSETT ELECTRIC COMPANY

By its attorneys,


/s/ Vincent F. O'Rourke, Jr.
Michael P. Angelini (BBO #019340)
Vincent F. O'Rourke, Jr. (BBO #318335)
Daniel P. Flynn (BBO #655180)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Of Counsel:

John F. Sherman,
Deputy General Counsel
David G. Lodemore, Esquire
National Grid, USA
25 Research Drive
Westborough, MA  01582
(508) 389-2971

September 21, 2007


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 21, 2007.

*/s/ Vincent F. O'Rourke, Jr.*
Vincent F. O'Rourke, Jr.

{Client Files\LIT\304810\0001\PLD\00992512.DOC;2}